UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

---------------------------------------------------------------- X

JESUS A. GONZALEZ,

Plaintiff,

- against -

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

Defendant.

---------------------------------------------------------------- X

MEMORANDUM AND ORDER

04-CV-3437 (JG)

A P P E A R A N C E S :

DAVID KUZNICKI, ESQ.
2 Rector Street, Suite 2104
New York, NY 10006
Attorney for Plaintiff
By: Abraham Kuznicki, Esq.

BENTON CAMPBELL
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
By: Karen T. Callahan
Attorney for Respondent

JOHN GLEESON, United States District Judge:

On June 12, 2007, the Commissioner of Social Security denied Gonzalez's remanded application for disability benefits. On October 9, 2007, I granted the Commissioner's motion to reopen the case. The Commissioner now moves pursuant to 42 U.S.C. § 405(g) to reverse the final agency decision denying Gonzalez's claim and to remand the claim for further proceedings. Gonzalez has cross-moved for a remand for calculation of benefits. For the

reasons stated below, the Commissioner's motion is granted and Gonzalez's cross-motion is denied.

## BACKGROUND

### A. *Procedural History*

On November 12, 1999, Gonzalez applied for disability insurance benefits claiming that he was disabled since November 8, 1999 due to injuries to his back and leg as a result of a motor vehicle accident three years prior. His application was denied. R. 19. Gonzalez then appeared with counsel before Administrative Law Judge ("ALJ") Seymour Fier for a hearing. In a decision dated November 13, 2003, ALJ Fier found that Gonzalez was not disabled because he could perform his past work as a handyman and could also perform a significant number of other jobs existing in the national economy. R. 19-28. In arriving at this conclusion, ALJ Fier elicited testimony from Dr. Thomas Weiss, a medical expert, and Marc Ramnauth, a vocational expert.

On July 16, 2004, the Commissioner denied Gonzalez review of the decision, and Gonzalez thereupon filed a complaint in this district. R. 5. By Stipulation and Order dated September 20, 2004, and "so ordered" by the Honorable Jack B. Weinstein on September 29, 2004, the Commissioner's decision was reversed and remanded pursuant to the sixth sentence of 42 U.S.C. 405(g) for further administrative proceedings in order to locate and reconstruct Gonzalez's disability claims file due to the Commissioner's failure to produce an audible recording of the initial hearing. R. 299-302.

On May 8, 2007, Gonzalez and his counsel again appeared for a hearing before ALJ Fier, along with a medical expert and a vocational expert. R. 329-52. On June 12, 2007, ALJ Fier found pursuant to Medical Vocational Rules 203.26 and 203.27 that even though

Gonzalez is severely impaired and cannot perform his past relevant work, he can perform a full range of medium work, and therefore he is not disabled. R. 232-43.

Plaintiff did not file exceptions to this decision, and it became final pursuant to 20 C.F.R. § 404.984(d). On October 2, 2007, the Commissioner moved to reopen this case. By order dated October 9, 2007, I granted that motion.

The Commissioner now moves for remand and reversal of the final agency decision denying Gonzalez's claim for disability insurance benefits and for further administrative proceedings pursuant to 42 U.S.C. § 405(g). In a cross-motion, Gonzalez seeks a remand for the award of benefits.

B. *Medical Evidence*

1. *Dr. Mark Rusek, Gonzalez's Treating Chiropractor, and Dr. Rusek's Referrals*

Dr. Mark Rusek, a chiropractor, began treating Gonzalez after his motor vehicle accident in November 1996. Tr. 172. He noted that Gonzalez suffered from cervical radiculopathy[1] and lumbar radiculopathy, and has herniated discs at C6-C7, L4-L5, and L5-S1. *Id.* He further noted that Gonzalez suffered from a 35% loss of function of his cervical spine and a 45% loss of function in his lumber spine, with permanent loss of range of motion in both. R. 172. Dr. Rusek referred Gonzalez to a series of specialists who affirmed that Gonzalez suffered an injury to his cervical and lumbar spine. *Id.*

Dr. Noel Fleischer, a neurologist, examined Gonzalez on January 15, 1997 and concluded that Gonzalez sustained traumatic lumbar radiculopathy and myofascial pain syndrome. He reported that Gonzalez complained of mid- and lower-back pain radiating with weakness in the left leg. Gonzalez also complained to Dr. Fleischer of difficulty with sitting,

---

[1] Radiculopathy refers to a disorder of the spinal nerve roots. WebMD, *Stedman's Medical Dictionary* (28th ed. 2006), http://dictionary.webmd.com/terms/radiculopathy.xml.

bending and sleeping. R. 176. Dr. Fleischer reported dorsal and lumbosacral spasm and tenderness with impaired range of motion in all planes. The straight leg raising test was positive at 50 degrees on the left side. R. 175-76. His gait and station were normal. R. 175. Dr. Fleischer recommended that Gonzalez continue with his chiropractic treatments. R. 174-5.

Dr. Reddy, an orthopedist, examined Gonzalez on January 16, 1997 and according to his measurements, Gonzalez suffered from decreased ranges of motion in his cervical and lumbar spine. Straight leg raising was positive on the left side at 60 degrees. R. 173. Dr. Reddy diagnosed Gonzalez with traumatic paracervical myofascitis[2] and traumatic paralumbar myofascitis with left radiculopathy, and concluded that Gonzalez is disabled. R. 173-74.

2. *MRI Scan and CT Scan Results*

On January 20, 1997, Gonzalez underwent a CT scan of his lumbar spine, and the radiologist, Dr. Ravindra Ginde, noted that the scan revealed rodlike straightening of the lumbar lordosis[3] that is consistent with muscular spasm and scoliosis convex to the right as well as a bulging of a disc at L5-S1. R. 181.

Almost a year later on January 2, 1998, Dr. Mark Freilich, a radiologist Gonzalez was referred to by Dr. Rusek, took an MR scan of Gonzalez's lumbosacral spine, which revealed a straightened lordosis suggesting muscular spasm, rotatory scoliosis[4], bulging discs at L1-L4, central herniation discs at L4-L5, L5-S1, hypertrophic changes articulating facets at all levels at

---

[2] Myofascitis refers to "inflammation of a muscle and its fascia." WebMD, *Dorland's Medical Dictionary for Health Consumers* (2007), http://medical-dictionary.thefreedictionary.com/myofascitis.

[3] Lordosis refers to an abnormal forward curvature of the spine in the lumbar region. WebMD, *Stedman's Medical Dictionary* (28th ed. 2006), http://dictionary.webmd.com/terms/lordosis.xml.

[4] Scoliosis refers to "abnormal lateral and rotational curvature of the vertebral column." WebMD, *Stedman's Medical Dictionary* (28th ed. 2006), http://dictionary.webmd.com/terms/scoliosis.xml.

L1-S1, neural foramina[5] stenosis[6] at all levels at L1-S1, and lateral recess stenosis at level L5-S1. R. 178.

At the request of Cathy Cuesta of the Greater New York Insurance Companies, on April 12, 1999, Gonzalez was examined by another chiropractor, Dr. Ivy Zelanka, for the purpose of reporting to the Workers' Compensation Board. R. 153-55. After reviewing Dr. Rusek's notes and performing her own examination of Gonzalez, Dr. Zelanka concluded that Gonzalez suffers from a mild partial disability to the lumbar spine consistent with a degenerative and stenotic spine. His cervical range of motion was within the normal limits during flexion, extension, rotation, and lateral bending. An examination of his lumbar spine revealed a weakness of Gonzalez's dorsal and left plantar flexion. Gonzalez was able to squat half way to the floor, and his straight leg raising was limited. R. 154. He could flex and extend his fingers fully, but an active range of motion in the lumbar spine was restricted in all directions, and he walked on heels and toes with difficulty. In Dr. Zelanka's opinion, Gonzalez had achieved maximum benefit from his course of supervised manipulative therapy. R. 153-54.

3. *Examinations After Filing Workers' Compensation Claim*

On August 24, 1999, Dr. Sylvan Stillman also examined Gonzalez for the purpose of reporting to the Workers' Compensation Board. Gonzalez arrived with a cane, favoring his right leg when walking. After examining Gonzalez, Dr. Stillman noted Gonzalez suffered from mild scoliosis of the dorso-lumbar spine. Additionally, he noted a spasm of the paravertebral muscles on the right and tenderness about the right lumbosacral region and tenderness over the C6. Motions of his trunk were moderately restricted and painful, as was straight leg raising. Dr.

---

[5] Foramina refers to natural openings through bone or tissue. *The American Heritage Medical Dictionary* (2007), http://medical-dictionary.thefreedictionary.com/foramen.

[6] Stenosis refers to "stricture of any canal or orifice." WebMD, *Stedman's Medical Dictionary* (28th ed. 2006), http://dictionary.webmd.com/terms/stenosis.xml.

Stillman diagnosed Gonzalez with a partial moderate disability, and directed that Gonzalez be under the care of an orthopedist. R. 151.

Dr. John Bendo examined Gonzalez on September 10, 1999 pursuant to a referral by Dr. Marc Silverman, who had treated Gonzalez for the first time on November 27, 1998. R. 81, 142, 148. Dr. Bendo's examination revealed that the range of motion of Gonzalez's lumbar spine is extremely limited. Studying the MRI scan of January 1998, Dr. Bendo concluded that it showed evidence of a central herniated disc at L4-5 and L5-S1, as well as hypertrophic facet at the level of the lumbar spine. Straight leg raising produced hamstring pain on the right side. R. 142. Additionally, standing x-rays revealed that the disc space narrowed at L5-S1. He diagnosed Gonzalez with lumbar radiculopathy. R. 142-43. At the time, Gonzalez was taking Tylenol as well as non steroidal anti-inflammatories for pain relief. T. 142.

Two months later, on November 1, 1999, Dr. David Mallin examined Gonzalez, and noted that Gonzalez was suffering from chronic lower back pain, vertebral point tenderness in the lumbar region of L4-5 and a sensory deficit in his left foot. R. 140. Straight leg raising bilaterally was negative. R. 140. Dr. Mallin instructed Gonzalez to refrain from physical activity until further evaluated and prescribed him Ultrum for his pain. R. 148

4. *Medical Reports After Onset of Alleged Disability*

Following Gonzalez's alleged disability onset date, Dr. Rusek again referred Gonzalez to Dr. Freilich, who examined the MR scan of his lumbosacral spine. Dr. Freilich noted on March 27, 2001 that Gonzalez suffered from exaggerated lumbar lordosis, rotatory scoliosis convex towards the right, bulging discs L2-L3 and L3-L4, herniation of disc L4-L5 towards the left and centrally, herniation of disc L5-S1 towards the left and laterally indenting the thecal sac, and neural foramina stenosis at levels L3-S1. R. 177.

On June 11, 2001, at the request of Dr. Rusek, Dr. Depika Baja, a neurologist, performed an electromyography ("EMG") and nerve conduction studies ("NCV"). Results from the NCV were normal, and the EMG results were consistent with lumbosacral radiculopathy. R. 182. She examined Gonzalez, noting that his range of motion in his lumbosacral spine for flexion, extension, right lateral flexion, left lateral flexion, right rotation, and left rotation are all moderately restricted with pain. The straight leg raising test was positive on the right at 35 degrees. She identified a muscle spasm in the lumbo paraspinal region, and diagnosed Gonzalez with lumbosacral radiculopathy. R. 183.

Over the course of four years, Dr. Rusek provided three reports as a treating physician in which he summarized his treatment of Gonzalez. In the first report, dated May 30, 2002, Dr. Rusek diagnosed Gonzalez with lumbar radiculopathy, with a fair prognosis but indicating that the prospects for recovery were non-existent. R. 197-98. He stated that Gonzalez must lie down for 3-4 hours each day to alleviate nerve pressure, and that this condition causes Gonzalez severe pain and loss of function of his lower legs. R. 199. Pain killers were ineffective. R. 199. On his physical capacities evaluation, Dr. Rusek noted that in an eight-hour workday, Gonzalez could sit for 1-2 hours a day, stand for 1 hour a day, and walk for 2-3 hours in a day. R. 200. Dr. Rusek also remarked that Gonzalez cannot sit or stand for over 30 minutes a day. R. 201. Additionally, Dr. Rusek indicated that there is no weight that Gonzalez could lift or carry. R. 200-01. He could not bend, squat, crawl, or climb at all, and Dr. Rusek recommends that Gonzalez be restricted from activity involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, or driving automotive equipment. R. 201.

In his second report dated July 14, 2003, Dr. Rusek stated that Gonzalez has depressed deep tendon reflexes into bilateral lower extremities, loss of sensory dermatome[7] of his lower extremities, and a loss of range of motion in his lumbar spine. R. 211. The MRI depicted forminal compression in the lumbar spine, bulging at L5-S. X-rays showed decreased disc heights at L3-L4, L4-L5 and L5-S1, as well as lumbosacral radiculopathy. R. 212. Dr. Rusek again diagnosed Gonzalez with lumbosacral radiculopathy, and indicated that Gonzalez is "*not* improving" but is receiving supportive care. R. 212 (emphasis in original). Dr. Rusek reported that Gonzalez should lie down during the day periodically for 30-40 minutes to alleviate the pain, and that during an eight-hour workday, he can only sit for 1 hour, stand for 1 hour and walk for 1 hour, and in any event, he may never carry or lift any amount of weight. Dr. Rusek notes that Gonzalez is unable to push or pull with both hands, that he is unable to use his feet for repetitive movements, and that he can not bend, squat, crawl, or climb. Dr. Rusek echoed his prior assessments as to the appropriate restrictions on activities. In his remarks, Dr. Rusek noted that Gonzalez can no longer walk unassisted. R. 215.

Dr. Rusek's third report, dated May 25, 2006, reiterated the conclusions of the prior reports, but specified that Gonzalez must lie down for 1-2 hours during the day, and that during an eight-hour work day, Gonzalez can sit for up to three hours, stand for one hour, and walk for two hours. R. 312. Dr. Rusek also noted that Gonzalez is able to use his hands repetitively to push and pull, but he can not use his feet for repetitive movements. Other than these distinctions, the third report is not materially different from the prior reports. R. 313.

In an undated letter, Dr. Rusek stated that Gonzalez suffers from lumbar radiculopathy and spinal stenosis, and that Gonzalez cannot sit, stand, or walk for over 15

---

7 Dermatome refers to the area of skin supplied with nerve fibers by a single posterior spinal root. *The American Heritage Medical Dictionary* (2007), http://medical-dictionary.thefreedictionary.com/dermatome.

minutes, and he is "fully and totally disabled from any work and cannot even do non-physical work behind a desk." R. 145.

Dr. Steven Weinstein also completed a Report of Treating Physician form and a Physical Evaluation form dated July 21, 2003, where he concluded that Gonzalez's symptoms of lower back pain support a diagnosis of lumbar radiculopathy, lower back syndrome and herniated discs. Dr. Weinstein indicated that Gonzalez must lie down during the day for a half-hour and that during an eight-hour workday, Gonzalez can only sit for one hour, stand for one hour, and walk for one hour, and under no circumstances may he carry or lift any measure of weight. He found that Gonzalez can use his hands for repetitive action, but cannot do so with his feet, is unable to bend, squat, crawl or climb, and should avoid activities involving unprotected heights, moving machinery, exposure to marked charges in temperature and humidity, driving automotive equipment, or exposure to fumes. R. 219-20. Treatment included physical therapy and chiropractic care, and he prescribed Ultram and extra strength Tylenol for the pain. R. 218.

5. *Consultative Examinations*

On January 7, 2000, Gonzalez was examined by Dr. Kyung Seo, an orthopedist. Gonzalez arrived with the help of a cane, and Dr. Seo noted that Gonzalez had no difficulty standing up from the sitting position, or getting on and off the examination table. His cervical spine exhibited normal cervical lordosis, normal range of motion, and no spasm of the paraspinal muscles. His upper extremities also showed a normal range of motion of the shoulder joints, elbow joints and wrist joints. His thoracolumbar spine exhibited normal curvature, but the lumbosacral spine showed diminished lumbar lordosis. The forward flexion was 30 degrees, extension was zero, while the lateral rotation, lateral flexion was 15 degrees with mild spasm of the paraspinal muscles of the lower back. His straight leg raising test was 60 degrees positive on

the left and 40 degrees positive on the right in the supine position. In the sitting position, the straight leg raising test was negative on the left side, and 40 degrees positive on the right. Dr. Seo noted diminished sensation in the right leg and noted that toe-to-toe walking was difficult, but heel-to-heel walking was possible. The muscle strength of both legs was graded as a 5/5. Dr. Seo diagnosed Gonzalez with lower back derangement, and noted that his ability to sit, stand, bend and left heavy objects was "slightly limited." R. 159-60.

Dr. Mohammad Khattak, also an orthopedist, examined Gonzalez on March 22, 2000. Gonzalez relied on a cane for walking assistance, but he was able to sit and stand normally, and he got on and off the examination table without any assistance. The curvature of his cervical spine was normal, and Gonzalez exhibited no muscle spasm or tenderness. His cervical spine range of motion included flexion of 45 degrees, extension of 30 degrees, lateral rotation of 45 degrees bilaterally, and lateral flexion of 45 degrees bilaterally. His deep tendon reflexes were 2+ and symmetrical. Dr. Khattak's examination of Gonzalez's lumbosacral spine revealed that his curvature was normal, that there was no paraspinal, sacroiliac or sciatic notch tenderness. His straight leg raising was negative bilateral, and his deep tendon reflexes were 2+ and symmetrical. His range of motion for his forward flexion was 45 degrees, and the lateral flexion was 20 degrees bilaterally. Dr. Khattak noted no motor or sensory deficits or muscle atrophy. The x-ray of his lumbosacral spine was negative, and he was diagnosed with post soft tissue injury of the cervical and lumbosacral spines, with a normal prognosis. According to Dr. Khattak, Gonzalez is able to sit, stand, bend, walk, reach, lift and carry, and does not need assistive devices for ambulation. R. 161-2.

Dr. Khattak again examined Gonzalez on April 1, 2002, observing that he walked with the assistance of a cane, limped and favored his right leg. He was able to get on and off the

examination table without any assistance, but he was not able to rise on his right foot, nor was he able to squat.

According to Dr. Khattak, the curvature of Gonzalez's cervical spine was normal, and there was no muscle spasm or tenderness. The range of motion for his flexion was 45 degrees, extension was 45 degrees, lateral rotation was 45 degrees bilaterally, and lateral flexion was 45 degrees bilaterally. His deep tendon reflexes were 2+ and symmetrical. He exhibited no problems with the range of motion of his upper extremities. The curvature of his lumbosacral spine was normal. There was no paraspinal muscle spasm or tenderness. His straight leg raising was negative bilaterally, and Gonzalez did not attempt to perform the range of motion tests. The x-ray of his lumbosacral spine indicated that there was no acute bone pathology. Dr. Khattak diagnosed Gonzalez with lumbosacral derangement, with a stable prognosis. His ability to bend and lift was mildly limited, but Dr. Khattak noted no limitations in sitting, standing, walking or reaching. R. 187-88.

On April 21, 2000, Dr. J. Pauporte, a state agency doctor, reviewed and affirmed Dr. Alan Fey's January 14, 2000 assessment of Gonzalez. R. 171. They both concluded that Gonzalez is capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; that he can stand and/or walk for a total of six hours in an eight-hour workday; that he can sit for a total of six hours in an eight-hour workday, and that his pushing and pulling abilities are unlimited. R. 165.

6. *Testimony of Medical Expert, Dr. Richard Wagman*

Dr. Richard Wagman testified as a medical expert at Gonzalez's May 8, 2007 hearing. In testifying, Dr. Wagman referred to (1) the January 1998 MRI, which showed herniated discs at L4-L5, L-5 and S-1; (2) Gonzalez's September 10, 1999 evaluation that

Gonzalez had positive straight leg raising on the right, consistent with his descriptions of pain doing down his lower right extremity; (3) the EMG study of March 22, 2001 which showed lumbar radiculopathy. R. 344. He eliminated from review Dr. Khattak's exams entirely. R. 345. The MRIs showing two herniated discs were consistent with Gonzalez's complaints of pain in the lower back area, and the EMG is likewise consistent with problems of sitting for long periods of time. Dr. Wagman testified that Gonzalez has diminished deep tendon reflexes bilaterally and in his lower extremities which is consistent with nerve irritation. R. 345. According to Dr. Wagman, Gonzalez does not have motor loss with atrophy or sensory or reflex loss. In an eight hour day, Dr. Wagman testified that Gonzalez could sit comfortably for approximately two hours, and could walk and stand for about two hours. R. 347-48. The ALJ inquired of Dr. Wagman whether there is medical documentation to support the statements of the questionnaires, and Dr. Wagman confirmed that the office notes of Dr. Weinstein were not available.

C. *Plaintiff's Personal and Work History*

Jesus Gonzalez was born on June 13, 1955, and he is now almost 53 years old. R. 63. He attended school in Puerto Rico only through the eleventh grade and cannot speak English. R. 120. He was last employed in November 1999 as a handyman, cutting grass, painting, moving furniture and doing house and machine maintenance jobs. R. 92. Gonzalez's injuries began on November 26, 1996, the day of his car accident, R. 78, 114, 172. His employer gave him light duty after he was injured. R. 114. He has not worked since 1999 and he is currently receiving worker's compensation benefits. R. 335-36.

Gonzalez was last treated in February 2007 for high blood pressure and pain. One month prior, Gonzalez traveled to Santo Domingo to visit his sick mother, and during his visit, he received injections for his pain. R. 336-37.

Gonzalez reported that he can walk for fifteen minutes but needs a half-hour to rest after. R. 133. He finishes projects that he starts, follows spoken and written instructions and gets along well with others. He also attends a weekly church service. R. 133-34.

## DISCUSSION

### A. *The Standard of Review*

Under the Social Security Act, a disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration follows a five-step procedure in evaluating disability applications:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" [that] significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment . . . listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work [that] the claimant could perform.

*Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quoting *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Federal court review of the Commissioner's decision is limited to determining whether the Commissioner's decision, as a whole, is supported by substantial evidence and whether the Commissioner has applied the correct legal standards. 42 U.S.C. § 405(g).

B. *The ALJ's June 12, 2007 Decision*

Analyzing Gonzalez's claim in accordance with the five-step analysis as set forth in the Social Security regulations, ALJ Fier concluded that even though Gonzalez suffers from severe impairments within the meaning of the Social Security regulations, Gonzalez has residual functional capacity for the full range of medium work, and there are jobs present in significant numbers in the national economy that Gonzalez might be capable of performing consistent with his functional capacity and vocational profile. ALJ Fier therefore concluded that Gonzalez is not disabled.

In arriving at this finding, Dr. Rusek's opinions were not given controlling weight because he is a chiropractor. ALJ Fier determined that

> [C]laimaint's allegations are disproportionate and are not supported by the medical record, in particular findings on physical examination and the results of diagnostic testing. In addition, the claimant's medical treatment has been conservative. He has not required hospitalization or surgical intervention. His medications have not been unusual for either type of dosage, and there is no indication that they have produced any adverse side effects. The claimant also engages in a reasonable range of daily living activities. . . . Given these factors, the claimant is not entirely credible.

R. 241.

C. *Remand Standard*

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial

evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "The court shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)) ("Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Commissioner for further development of the evidence.")

The Commissioner concedes that the ALJ's decision was based on legal error, and that I must accordingly remand the decision for further proceedings. A remand for calculation of benefits is not appropriate here because it is conceivable that a more complete record might support the Commissioner's decision. *Rosa*, 168 F.3d at 83.

D. *Remand for Further Proceedings*

The Commissioner recognizes that the ALJ's decision is inconsistent, ambiguous and contains legal error, and that a remand for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) is appropriate under these circumstances. The record was not adequately developed with evidence from the treating sources. Medical expert Dr. Wagman testified that the conclusions reached by Dr. Weinstein were not supported by office notes and medical evidence. But ALJ Fier did not, in accordance with 20 C.F.R. § 404.1512(e), attempt to obtain clarification or additional evidence from Dr. Weinstein. Second, the ALJ did not adequately develop the claimant's testimony as to the extent of the effects of his impairments, his daily activities, and the treatment sought. Finally, even though Dr. Wagman concluded that

Gonzalez could sit for two hours, stand for two hours and walk for two hours, this statement is inconsistent with the ALJ's residual functional capacity determination that Gonzalez is capable of performing a full range of medium work. Both the Commissioner and Gonzalez highlight that pursuant to Social Security Ruling 83-10, in order to perform medium work, an individual must be able to stand or walk, off and on, for a total of approximately 6 hours in an 8 hour workday. Social Security Ruling ("SSR") 83-10. On remand, the Commissioner must reassess the evidence and make a conclusion consistent with the evidence and the applicable standard.

Gonzalez echoes the foregoing concerns, which have been advanced by the Commission, and adds that the ALJ failed to give appropriate weight to the opinion of Dr. Weinstein pursuant to the treating physician rule, which requires that the ALJ regard the medical opinion of a treating physician with "controlling weight" as to the "nature and severity" of the claimant's impairments so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(d)(2) (2005); *see also Clark v. Commissioner*, 143 F.3d 115, 118 (2d Cir. 1998). Gonzalez further contends that if the ALJ were to give Dr. Weinstein's opinions the proper weight, there would be no need to develop the record any further, and therefore the Commissioner's decision should be reversed and the case remanded solely for the calculation of benefits.

The Commissioner agrees that the ALJ's rejection of Dr. Weinstein's opinion was not in accord with the treating physician rule, *see* Def. Rep. Br. 3, but contends that this requires remand for further proceedings, not remand for calculation of benefits. It argues that the ALJ may still properly conclude, based on Dr. Wagman's testimony, that Dr. Weinstein's conclusions are not supported by his notes or by the medical evidence.

I agree that remand for the calculation of benefits is not warranted in this case. Under *Schaal v. Apfel*, 132 F.3d 496, 504 (2d Cir. 1998), a court may order such relief only when application of the correct legal standard could lead to but one conclusion. And as the Commissioner points out, there are inconsistencies between Dr. Weinstein's opinions and the other medical evidence. Dr. Weinstein's July 21, 2003 assessment that Gonzalez has trouble sitting, walking, standing for long periods of time is contradicted by other reports that show full muscle strength in the lower extremities. Def. Rep. Br. 3; see also R. 124, 142-43, 159, 175, 184. The Commissioner also highlights additional facts in the record that conflict with Dr. Weinstein's assessment of Gonzalez's physical restrictions.[8] I am persuaded that the evidence does not necessarily lead to the conclusion that Gonzalez is disabled.

Gonzalez also contends that a remand for further proceedings is not appropriate in light of the lengthy delays he has already endured. Having filed this claim nearly nine years ago, Gonzalez has undoubtedly endured significant delays. Though I am sympathetic, delay alone is no substitute for evidence of a disability. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (reversing district court's retroactive award of benefits because claimant failed to present substantial evidence of disability, even though the claim had been twice remanded to Commissioner and had been pending for ten years; "The district court . . . voiced outrage at alleged improprieties in the administrative hearing and the ten-year delay since [the claimant]

[8] Specifically, the Commissioner notes, *inter alia*, that (1) the absence of radicular findings is inconsistent with Weinstein's assessment that Gonzalez has difficulty sitting, standing and walking; (2) there are no findings to support an assessment that Gonzalez is unable to lift, carry or perform repetitive motions with his feet; (3) while the March 27, 2001 MRI showed herniated discs, it was not conclusive evidence of nerve root impingement, as the follow-up studies were normal; (4) even though the EMG study results were consistent with lumbosacral radiculopathy, Dr. Baja noted normal motor strength and reflexes in the upper extremities; (5) Weinstein's treatment of Gonzalez is inconsistent with the disability assessment; and (6) even after he claimed to be totally disabled, Gonzalez continued to work by cutting grass, moving furniture and doing house and machine maintenance jobs. *See* Def. Rep. Br. 3-4; *see also* R. 105, 177, 183-84, 217.

first filed her petition. While we have sympathy for the district court's reaction, we cannot decorate such sentiments with the force of law.").

Because ALJ Fier did not adequately develop the administrative record and because he applied the wrong legal standards, the case is remanded for further proceedings. I strongly urge the Commissioner to proceed quickly and to make all efforts to hold the hearing on the claim within 90 days from the entry of judgment.

D. *The Admissibility of Dr. Khattak's Reports*

Gonzalez contends that in light of Dr. Khattak's removal from the New York State Agency panel of physicians eligible to perform consultative examinations for the SSA, the reports of Dr. Khattak should not have been relied on by the ALJ. The Commissioner cites a memorandum issued by the Acting Regional Chief Administrative Law Judge on January 23, 2006 instructing the ALJs that "If the files contain any reports from Dr. Khattak, care should be exercised in reviewing them and determining the weight to accord to such examinations." *See* Pl. Mem. Opp. 19-20; Pl. Mem. Opp. Ex. C. On February 8, 2006, a subsequent memorandum was issued informing the ALJs that Dr. Khattak had been removed as a consultative examiner, Pl. Mem. Opp. Ex. D. And in a recent Appeals Council decision dated April 21, 2007, the Council wrote that because Khattak has been removed from the panel, evidence from him is no longer entitled to any weight. I agree with Gonzalez that, on remand, the ALJ should not rely on Khattak's reports.

## CONCLUSION

For the reasons discussed above, this is not a case where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980). The evidence needs to be

developed and clarified, and the record as supplemented must be weighed in accordance with the treating physician rule and the other applicable legal standards. Accordingly, the Commissioner's motion is granted and the case is remanded for further proceedings. Gonzalez's cross-motion for remand for the calculation of benefits is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 20, 2008
Brooklyn, New York